BENJAMIN B. WAGNER
United States Attorney
HEATHER MARDEL JONES
Assistant U.S. Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099



Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $6,822.00 IN U.S. CURRENCY,<br><br>Defendant. | 1:11-CV-01000-OWW-GSA<br><br>**ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM*** |

WHEREAS, an amended Verified Complaint for Forfeiture *In Rem* has been filed on June 17, 2011, in the United States District Court for the Eastern District of California, alleging that the defendant approximately $6,822.00 in U.S. Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more violations of 21 U.S.C. §§ 841 *et seq.*;

And, the Court being satisfied that, based on the amended Verified Complaint for Forfeiture *In Rem* and the affidavit of Drug Enforcement Administration Special Agent John L. Busse, there is probable cause to believe that the defendant currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

1     IT IS HEREBY ORDERED that the Clerk for the United States District Court, Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the defendant currency.

Dated: 6/29/11

DENNIS L. BECK
United States Magistrate Judge

## AFFIDAVIT OF JOHN L. BUSSE

I, John L. Busse, being first duly sworn under oath, depose and say:

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA) and have been so employed since 2004. As a DEA Special Agent (SA), I am charged specifically with the enforcement of the Controlled Substances Act and the investigation of Federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. Prior to my employment with the DEA, I was employed in 2003 as a US Customs Inspector with the Bureau of Customs and Border Protection. As a Customs Inspector I was charged with the detection and interdiction of illegal drugs, among many other law enforcement duties. I have successfully completed the Department of Homeland Security Customs Inspector training at the Federal Law Enforcement Training Center in Glynco, GA, and the DEA Basic Agent Training in Quantico, VA. I have received additional professional instruction in money laundering investigations, internet and telephone investigations, interview techniques, wire tap investigations, and other law enforcement skills and methods. Based on my training and experience, and in working closely with other law enforcement officers, I have become very familiar with criminal methods used to manufacture, possess, package, conceal, transport, and distribute narcotics. I have testified in state and federal courts concerning criminal controlled substances charges. I am presently assigned to the DEA Resident Office in Fresno, California.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, in that I am an officer of the United States, empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 United States Code, Section 2516. The facts set forth in this affidavit are known to me as a result of my investigation and interviews with agents and officers who are named in this affidavit.

3. This affidavit is made in support of a warrant for arrest of defendant approximately $6,822.00 in U.S. Currency (hereafter "defendant currency"). The defendant currency constitutes moneys or other things of value furnished or intended to be furnished

1  in exchange for a controlled substance or listed chemical, all proceeds traceable to such an
2  exchange, and all moneys, negotiable instruments, and securities used or intended to be used
3  to facilitate one or more violations of 21 U.S.C. §§ 841 et seq., and is therefore subject to
4  forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

5  4. The facts set forth in this affidavit are known to me as a result of reviewing
6  official reports, documents, and other evidence obtained as a result of the investigation, and
7  through conversations with other agents and detectives who have participated in this
8  investigation and I have determined the following:

9  5. On December 23, 2010, a California Highway Patrol (CHP) officer initiated a
10 traffic stop of a white Honda Accord traveling southbound State Route 99, after observing
11 that the Accord had tinted front windows and a cracked front windshield, in violation of
12 California Vehicle Code §§ 26708(a)(1) and 26710. Jorge Herrera Montes ("Montes") was
13 driving the vehicle, and his brother, Eduardo Montes Herrera ("Herrera") was the sole
14 passenger.

15 6. A CHP officer separately questioned Montes and Herrera during the traffic stop,
16 and the two gave conflicting statements. Montes said he and Herrera were coming from
17 Herrera's house in Madera; that they had stopped there for about 20 minutes; and that after
18 leaving there, they had stopped at Herndon and State Route 99. When asked who owned the
19 car, Montes said it belonged to his sister from Visalia, who let him borrow it for two days.
20 In fact, the registered owner of the car was not Montes's sister, but Sergio Andrade.

21 7. After speaking with Montes, the CHP officer returned to the Accord and asked
22 Herrera for the vehicle registration and whether Herrera knew who owned the car. Herrera
23 said he did not know who owned the car. In addition, contradicting Montes, Herrera said
24 Montes had the car a few months, and that he and Montes did not stop anywhere on the way
25 from Herrera's house in Madera. Herrera further stated that he and Montes were on their
26 way to Montes's house.

27 8. After Herrera denied knowing who owned the car, the CHP officer returned to
28 Montes and asked if he and Herrera were brothers from the same parents. Montes

1  responded in the affirmative. Montes also stated that the sister from whom he borrowed the car was also Herrera's sister.

9.  A CHP officer asked Montes if there were large amounts of cash in the car, or any firearms or drugs. Montes stated that there were not.

10. Montes gave the CHP officer verbal and written consent to search the vehicle. He was then subjected to a personal search and asked to sit on the curb next to a patrol vehicle.

11. Herrera was also searched. After detecting a large lump in Herrera's front pocket, the CHP officer asked if it was money, and Herrera responded that he had about $5,000 in his pocket. Herrera was then asked to sit on the curb next to Montes while the vehicle was searched.

12. The exterior and interior of the Honda Accord were searched with assistance from a narcotic-detecting dog. The dog gave a positive alert to the left-rear corner of the car's trunk. A CHP officer lifted the carpet in the rear section of the trunk and saw that the access plate for the fuel tank was missing one of the three screws supposed to hold the plate in place. The officer moved the access plate, and observed that it was not attached by the remaining screws but was instead redesigned with three steel pins that held it in place and could be removed by a quarter turn in either direction. The officer opened the access plate and found a hidden compartment with two Tupperware-type bowls with red lids wrapped tightly in plastic wrap. The bowls held approximately 822.1 grams of crystal methamphetamine.

13. Montes and Herrera were taken into custody. A CHP officer removed the wad of cash from Herrera's pocket. The cash taken from Herrera's pocket totaled $6,822, in the following denominations: forty $100 bills, two $50 bills, one-hundred-twenty-nine $20 bills, fourteen $10 bills, and two $1 bills. That cash constitutes the defendant currency in this case.

14. An additional $646 was removed from Montes's front pocket.

///

15	The Honda Accord was towed to the Fresno CHP Office with the methamphetamine left in place. Montes and Herrera were also transported to the Fresno CHP Office.

16.	After being taken into custody, Montes and Herrera both invoked their right to remain silent.

17.	The CHP conducted a controlled, canine sniff test, by placing the money taken from Montes in one metal locker and the money taken from Herrera in another metal locker in a different location, outside the presence of the trained narcotic dog and its handler. The narcotic dog alerted positively to both lockers.

18.	The $646 seized from Montes was subsequently forfeited through administrative proceedings, with no claim filed by Montes or anyone else.

19.	When interviewed about the source of the $6,822 found in his pocket, Herrera said he was neither employed nor self-employed, and that he does not have a bank account. He nonetheless claimed that the money belonged to him and that his wife had given it to him. He said the money was meant to buy a car, and that the purpose of his travel on December 23, 2010, was to go to a junk yard to buy a car.

20.	Both Montes and Herrera have extensive drug-related criminal histories. Montes was arrested in 1985 for drug possession and drug transportation; and in 1986, on multiple counts of drug possession for sales, criminal conspiracy, obstructing police, and several arrest warrants for marijuana sales, and an arrest for vehicle theft; and in 1987, for transportation of drugs, possession for sales, resisting police, and possession of a dangerous weapon; and in 1988, for drug possession for sales; and in 1990, for rape; and in 1999, for drug possession for sales and other crimes; and was convicted in 2004 for evading police. Herrera was arrested in 1989 for drug possession; and in 1992, for transportation of drugs for sale and furnishing marijuana; was convicted in 1993 of criminal conspiracy; was arrested in 1996 for felon in possession of a firearm and contributing to the delinquency of a minor; and in 1997, for drug possession and battery; and in 1999, for having a concealed weapon in a vehicle; and in 2003 for vandalism.

21. According to the Employment Development Department ("EDD"), Herrera has no reported wages since 2008.

22. Based on the foregoing, it is respectfully requested that a Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for the defendant currency.

JOHN L. BUSSE
Special Agent
Drug Enforcement Administration

Sworn to and Subscribed before me this 29 day of June 2011.

Honorable Dennis L. Beck
United States Magistrate Judge

Reviewed and approved as to form

Heather Mardel Jones
Assistant U.S. Attorney